George Stairley died in June 1835. By his will, bearing date 14 October 1833, after certain specific bequests, he directs as follows, viz: “I desire that the balance of my property, both real and personal, be kept together, viz: my property in Beaufort District, to be kept together there, and my property in Greenville to be kept there, until my son Benjamin Franklin Stairley, and my daughter Mary Elizabeth, both become of lawful age, or my daughter marry a man of lawful age; then, and at that time, the whole of my property, both real and personal, not specifically willed, to be valued by disinterested men, and my wife and children then to share it, share and share alike, agreeably to its value, <fcc.” The widow of the testator was appointed executrix, and his son, Benjamin F. Stairley, executor, when of lawful age, provided he was approved by the Ordinaries of Greenville and Beaufort Districts. At the period of the testator’s death, his son Benjamin was about fifteen years of age, and his daughter Mary Elizabeth about thirteen. The estate consisted of a cotton plantation, and about forty negroes, in Beaufort District, anda small plantation, or farm, on Reedy river, and seven or eight slaves, with some other property in Greenville District. He had also an interest in an estate in Newberry. He owed no debts. After her husband’s death, his widow resided on the Reedy river place, managed frugally and carefully, and made enough on the place to support the family until it became necessary to remove to the village, for the purpose of educating the children. Her brother, H. Lester, visited the Beaufort estate occasionally, at her request, and made the proper arrangements for the management of it. Her *23 annual returns were regularly made to the Ordinary; and according to the last return, in January, 1838, after defraying all the current expenses, and paying $3,200 for the purchase of a house and lot in the village of Greenville, she had a balance in her hands, amounting to one thousand six hundred and forty one dollars and seventy-seven cents, ($1641 77.) In March, 1839, the executrix intermarried with the defendant, William Rabe. He was a foreigner by birth, a Prussian, who had been a short time in the United States. He was between 20 and 25 years of age; and kept a small Druggist establishment in the village of Greenville. This Bill was filed in behalf of Benjamin F- and Mary Elizabeth Stairley, by their uncle Philip C. Lester, who has since been appointed their Guardian-in-chief. The prayer is for a partition of the estate, or that a receiver may be appointed, or that the defendants may give security for the faithful discharge of their trust.
The defendants do not object to a partition. Indeed, it appeared that at June Term 1839; they had made application for that purpose, but, as far as the Court can understand, tile application was rejected, by the presiding Chancellor, on the ground that the will of the testator was the law of the case, from which the Court would not depart but under extraordinary circumstances. It may not be improper to remark that a partition of the Beaufort establishment could not be made, without a sale. Apart from the very questionable propriety of ever ordering an immediate sale, under such circumstances, against the declared wishes of the testator, it was manifest, that to bring this property into market, in the present state of the country, would probably be attended by disastrous consequences. The principal controversy, and the only difficulty, arose on the application for the appointment of a receiver-It was urged on the grounds that the marriage of the executrix had jeopardized the interests of the estate, that her husband was a foreigner, irresponsible in his estate, without experience, and entirely unfit, in every respect, for the management of the property.
The rule certainly is, that the administration will not be taken from an executor without strong reasons; “because,” says Lord Erslcine in Middleton vs. Dodswell, 18 Ves. *24 268, “ it is for the testator, not the Court, to say in whom the trust for administration of the effects shall be reposed.” It is questionable whether the Court would appoint a receiver, where the executor was a bankrupt, known to be so by the testator.
It is certain that the mean circumstances of the executor, is not a sufficient ground for appointing a receiver. Howard vs. Papera, Madd. R. 86 or 142. But if the executor become afterwards a bankrupt, a receiver will be appointed, Langly vs. Hawk, 5 Madd. 36; and in 12 Ver. Sir William Grant, after stating that the mean circumstances of the executor was not a sufficient allegation, adds, “if any misconduct, waste, or improper disposition of the assets of the testator is shewn, the court would instantly interfere, and appoint a receiver.” These are tíre general principles by which the Court is governed.
In Dillon vs. Lady Mount Cashell, 4 Bro. P. C. 341, it was held by the House of Lords, that where an executrix marries a second husband in necessitous circumstances, and there are infant children of the first marriage, the Court will appoint a receiver. In Lake vs. De Lambert, 4 Ves. 593, a decree was made, discharging from á trust a woman who had married a foreigner; though the answer denied the intention of quitting the kingdom, and stated her desire of continuing in the trust. The Lord Chancellor, in making his decree, according to the prayer of the Bill, remarked, “that it was very inconvenient for a married woman to be a trustee.” It is not to be doubted, that the Court interferes with less reluctance, where the executrix has contracted a second marriage. The confidence of the testator was reposed in his widow, and in her management; ordinarily, where her situation is changed, her authority ceases, and the government passes into other hands. In the case before the Court, it appeared that until her marriage, the management of executrix was judicious and successful; subsequently, the direction and control was with the husband. It seemed to be conceded, that he possessed none of the qualifications necessary for the conduct of such an estate; perhaps one of the last persons who would have been selected by the testator, for the superintendence of his affairs, or to whom he would have committed the education or control of his children. It did not appear *25 the Court, that any charge was suggested against the moral character of the defendant, Rabe; certainly no evidence to that effect was offered.. But he was only a few years older that the testator’s sori, with very limited means, entirely without experience in agricultural pursuits, and apparently with very little aptitude for making useful progress in such occupations. The Reedy river place was abandoned, and the slaves of the estate transferred to a place which the defendant had purchased for himself, and for which he paid the sum of two thousand dollars, out of the funds of the estate; the witness, Josiah Kilgore, regarded this price as double the value of the land. The crops were bad, while those of .his neighbors were generally good; the last year they bought corn, and the stock of the estate was reduced. According to the last return the executrix had in hand, oil' 8th January 1838, a balance of $1538. The defendant made no return to the Ordinary until 1840, when he tendered an informal return marked exhibit (A.) by which it appeared, that since the last return, the receipts had amounted to $2812, and the expenditures to $5437, which,' after exhausting the balance of January ’38, brought the estate indebted to the defendant, in the sum of $1419,- including commissions and interest.
It is proper to add that Benjamin F. Stairly is in the junior class in the South Carolina College, and Mary Elizabeth is at the Columbia Academy, both having been placed at the respective Institutions by their uncle -Philip C. Lester, who for some time past -lias borne the principal, if not, entire expense of their education.
In Middleton vs. Dodswell, to which the Court has already adverted, the Lord Chancellor, after expressing the delicacy wliicli is due to an executor appointed by the testator, adds : “But if a manifest,abuse of the trust, by wasting the property, appears, not from a single act, but an habitual and prospective course of dealing, bringing the property into danger, can it be said,- that this Court is not to treat an executor as every other trustee! and can an executor say, that unless he is proved to be insolvent, the Court is to overlook the misapplication, and refuse a receiver.” To the proposition thus nakedly stated, the answer is obvious, <fec.
B. F. Perry for the motion
J. E. Henry, contra.
In the opinion of the Court the testimony presents a sufficient case of mismanagement, misappropriation of the funds, and hazard to the property, to warrant its interposition, by the appointment of a receiver. In the exercise of this power, it is satisfactory to the Court to believe that the interference does not conflict with the right or the authority of the testator in directing the administration of his own estate. It is ordered and decreed that it be referred to the Commissioner of this Court to appoint a fit and proper person to be receiver of the estate of George Stair-ley, deceased : the person so to be appointed first giving good, and sufficient security to the Commissioner, in double the value of the personality and rents of the realty, for the faithful discharge of his duties ; and that the said receiver shall collect the debts and manage the real and personal estate, and account for his transactions to this Court. It is further ordered and decreed, that the defendants, William Rabe, and P. Rabe, his wife, account before the proper officer of this Court, for the management of the said estate and that the Commissioner report thereon, and have leave to report any special matter in relation to the same. It is also ordered that he report what allowance should be made for the maintenance and education of the minors ; the parties, as well as the receiver .to be appointed, being at liberty, from time to time, to apply for such further orders and directions, in relation to the testator’s estate, as shall be just and necessary.
The defendants appealed from this decree, upon the grounds,
1st. Because his Honor the Chancellor erred in ordering the appointment of a receiver, there being no testimony to warrant the Court in taking the management of the property out of the hands of the executrix and her husband.
2d. Because his Honor ought to have decreed a division of the estate from the testimony adduced.